Mr. Chief Justice, and may it please the Court, the Montana Supreme Court concluded that BNSF is subject to general personal jurisdiction in Montana for two reasons. First, it held that Montana state courts exercise general all-purpose jurisdiction over BNSF because BNSF does systematic and continuous business activity in the state. Second, it held that Section 56 of the Federal Employers' Liability Act confers personal jurisdiction on state courts. Both conclusions were wrong. First, under this Court's decision in Deimler, BNSF is not subject to general personal jurisdiction in Montana because it is not at home in Montana. Montana is not BNSF's principal place of business, nor its place of incorporation, and there is nothing exceptional about BNSF's activities. Sotomayor, I'm sorry. Didn't it register in Montana to do business? Isn't it required to register? It is required, and it has registered to do business. Now, I thought the point below didn't reach that question. But does the registration in Montana change this discussion? It doesn't, Your Honor. It doesn't. If I, as an individual, establish residency in multiple places, I can be sued for all of my activities there, correct? So why can't a corporation? Your Honor, so the holding in Deimler was that even doing systematic, continuous, sizable business would not be sufficient to confer general personal jurisdiction. Now, I understand the question. Sotomayor, if we're going to treat a corporation like a person, which we seem to be doing, why isn't their registration of an agent for purposes of accepting service enough? Well, if you treat the corporation as a person, I think what this Court's due process cases say is that you look for where the corporation could be fairly regarded as at home. That would be the equivalent to the personal domicile. And in Deimler and Goodyear, this Court suggested that the paradigmatic places would be the principal place of business and the place of incorporation. Registering to do business is simply one part of a company's business activities, but it does not in and of itself come anywhere close to subjecting a corporation to general personal jurisdiction. Well, there's an argument. There was an argument in the case we just heard that by registering, you effectively consent to jurisdiction, and consent is always a good basis for it. It is. Your Honor, I think with respect to consent, the argument, especially in this case, that by registering to do business in Montana law, BNSF consented to any kind of jurisdiction is expressly negated by the text of the Montana statute, which says registering to do business in and of itself does not confer personal jurisdiction in this State. Of course, the issue, I guess, was not addressed below and is not before us. Correct. I'm looking at footnote 1 in the government's brief. Your Honor, I would draw a distinction about how the registration issue can play in this case. One is, is registration as part of the overall level of activity engaged by the company, is that enough to make it at home? Clearly, we think it cannot. Registration, running trains through the State, that's not enough to make it at home in Montana. There's a separate issue of whether registration in and of itself is some sort of implied consent to be subject to general personal jurisdiction, and the Montana Supreme Court didn't reach that issue. So with respect to Section 56, the Montana Supreme Court reached the truly unique and unprecedented conclusion that Congress, in confirming the concurrent subject matter of the State courts, meant for the first time to confer personal jurisdiction. As this Court held in the Second Employer's Liability Act cases, decided just two years after Section 56 was enacted, Section 56 was designed to abrogate the Supreme Court of Connecticut's decision in Hoxie, which had held that Congress in FILA had tried to establish exclusive Federal court jurisdiction over FILA claims. So Congress, in the concurrent jurisdiction clause in FILA, confirmed that State courts retained concurrent subject matter jurisdiction. Concurrent subject matter jurisdiction is also a term of art that has, for 200 years since the Judiciary Act, and it's in the Judiciary Act, has been understood to refer to subject matter jurisdiction and not personal jurisdiction. Respondents don't cite a single historical example of where subject matter jurisdiction has been deemed to include personal jurisdiction. Kennedy, it was related somewhat in the last case. Could Congress pass a statute conferring jurisdiction in Montana State courts under the circumstances of this case? We don't, we, well, let me, I'll take that in parts, because one part of it raises a significant. I don't know if it's that essential for your argument, but I'm just curious what your view is. I would, so I would, Justice Kennedy, I would take it in two parts. Congress, we believe, could constitutionally provide for nationwide service of process provisions in Federal courts. I think where the issue gets very difficult is whether Congress could prescribe the Federal jurisdiction of the State courts. It's not something that Congress has ever done. There is no historical example of that, and it would raise some serious Federalism constraints. And we also argue serious 14th Amendment constraints. In any event, FELA does not attempt to do that against the court in the almost contemporaneous case decision in the Second Employer's Liability Act made clear that Congress was not trying to enlarge or regulate the jurisdiction of the State courts or to control their modes of procedure. And I think the consequences of trying to read a special venue statute as containing a grant of personal jurisdiction would really call into question what the 200 or odd so special venue statutes in the Federal code are doing, whether they have some heretofore unknown grant of personal jurisdiction. It may have language that's simply not the way that Congress traditionally has spoken to the issue of personal jurisdiction. It may have language that's currently in the general venue statute. Nobody thinks that 1391 provides for personal jurisdiction. The general venue statute from 1948 to 1988 used the may have language, a suit may be brought wherever a corporation is doing business. Again, nobody thought that the general venue statute at that time was an independent source of personal jurisdiction. Instead, the way that Congress speaks to Federal personal jurisdiction is through changing the options for service of process. And that was established in 1838 in the Tolan v. Sprague case. It was reiterated in Robertson in 1925 when the Court actually explored the difference between venue-type language and jurisdictional-type language and cited specific statutory examples of where Congress had expanded Federal court jurisdiction. Are you saying that service of process language is an absolute necessity? I don't think it's an absolute necessity. The Congress could say something about personal jurisdiction itself, like in current Rule 4, but I do think there must be some method prescribed by Congress, as this Court said, in omni. Aren't there some statutes that look like the first sentence of this statute that have been read as personal jurisdiction requirements? I'd respondents cite a couple post-omni cases that infer service of process provisions from statutes that set up eight agencies and where the courts have held in those circumstances that unless we infer some kind of subpoena authority, the agency just won't be able to get out the door or do its job. But by and large, as this Court said in omni, I mean, this Court has never inferred a service of process provision, and the Court in omni gave three very good reasons for why that would be a bad idea. First, that Congress knows how to do it, and so you don't want to presume that Congress doesn't know how to do it. Second, that legislative rulemaking has the benefit of better predictability. And third, that in light of the long tradition of how Congress has spoken to these issues, it would be unwise for courts to get into the business of common-law rulemaking for establishing personal jurisdiction. Alito, one of the amici supporting the Respondent says that adopting your position would create chaos in the industry. What is your response to that? I think just the opposite is true, Justice Alito. Adopting our rule would bring some predictability and some order to the industry. Right now, it is a true wild west of FILA claims being filed in forms like Montana and like these cases, where the plaintiffs are not from Montana, none of the alleged negligence occurred in Montana, none of the alleged injury occurred in Montana, and yet we're still subject to suit there. So FILA plaintiffs using specific jurisdiction or general jurisdiction, but going to forms that have a reasonable connection to the litigation will, in fact, bring order to this area. Well, what about someone who's working very far? Routinely, they work very far from their home. They're injured very far from home. What would your rule do to them? I think that that individual would have specific jurisdiction in the place where they were injured. If they were regularly employed in a particular State, let's say Montana, and they were sent out of State, I think there would be — there may well be specific jurisdiction depending on the analysis of the episode in suit. Did the supervisor send the person there? Was equipment from Montana sent out with that person that, you know, caused an injury? But specific jurisdiction would be available, and of course, the safety valve of all-purpose jurisdiction would be available as well. I'd like to reserve the remainder of my time. Thank you, counsel. Ms. Zaharsky. Mr. Chief Justice, and may it please the Court. So there are two questions before the Court. The Court said in Omni that in order to assert personal jurisdiction, you have to have a statute or a rule making the defendant amenable to service of process. There's a question of here, is it Section 56 or Montana law? We've explained why we think it's Montana law. And then the second question is, if they're exercising service of process on Montana law, does — is that general jurisdiction consistent with the standards the Court set out in Daimler and Goodyear? And we don't think that it is. So on — particularly on the Section 56 question, because that's one where there's a strong Federal interest in not having words that don't say anything about service of process being interpreted to, in fact, say something about service of process, we have a first sentence that refers to venue only in Federal courts, and then a second sentence referring to State courts, but all it does is to clarify that there is concurrent jurisdiction in the State courts. And we just don't see how you can get to conferral of personal jurisdiction in the State courts, especially when we know very clearly from the legislative record that Congress was trying to solve two particular problems, the first in the first sentence with venue in Federal courts, and then the second in the second sentence with making sure that State courts understood that they could hear these claims. I think it is also noticeable, as Petitioners' counsel suggested, that we have not — we are not aware of any example in which Congress has used language of this type to confer personal — or even more explicit language to confer personal jurisdiction in the State courts, and also that even at the time, back in 1910, Congress knew how to confer personal jurisdiction if it wanted to. We gave examples in — of the Clayton Act from 1914 in our brief, the Credit Mobiliar Act in Petitioners' brief, and then these were also discussed in the Robertson case from 1925, and that Congress knows how to do venue versus service of process. That has continued up through the Court's decision in Omni. So we just don't think that Section 56 should be interpreted to be the first statute to do it, especially where the implication with respect to the second question would be to say that a company like BNSF is subject to general personal jurisdiction in 28 or more States. If the Court's decisions in Goodyear and Daimler mean anything, it's that that just can't be correct. The respondents note what we said in Daimler, that in addition to the state of incorporation and the principal place of business, there may be particular circumstances where another State could be considered their home as well. And given the volume of activity in the State in terms of the physical plant, the railroad goes through, I forget the number of employees, why doesn't that fit within that additional criteria? Well, the Court described that category very narrowly as a place where the contacts are not just that there are continuous and systematic business contacts, but where they are so significant that you consider the company at home there, that it's like the company's domicile. And the only court example that the Court's given of that to this point is the Perkins case, where you have the company that actually relocated during the war from the Philippines to Ohio. And there they said that they were going to do that. Let's say a State has a headquarters in Delaware. It sells 51% of its goods in New York and 49% in California. Almost equal number of employees, a difference of 10%, let's say. Same amount of property, whatever. And I'm assuming this railroad could fit that description in a number of States. Why isn't it at home where a substantial amount of its business is going on? Well, because that would make the railroad at home in so many places for purposes of general jurisdiction. And the Court said that where the focus should be going forward, and we think that this makes sense, is in specific jurisdiction. In the situation that you posited where there are these two States where a lot of things are happening, that's where you would expect a lot of causes of action to arise. And so there would be personal jurisdiction over the defendant there. It would just be on a specific jurisdiction. The Court conceived of general jurisdiction as a fallback, a place where you couldn't just subject the defendant to suit there for a claim arising out of or related to its context with the State, but just any kind of claim. What's the logic of that? Other than we said it. It certainly was very different than what International Shoe ever considered. What's the unfairness? We go back a little bit to the question that, to the predecessor case, if you're present in both States in an almost equal amount, and you are doing the bulk of your business equally, why shouldn't you feel that you're going to be hauled into both places? Well, it's the difference between being hauled into court for claims that arise out of or are related to the context with the State, as opposed to claims that are just any kind of possible claims. And I think the reason that the Court talked about you being at home is because it's the equivalent of, like, domicile for a person. It said, what's the equivalent of a corporation? A place where it voluntarily chooses to go to do its business, it gets the benefits of that State's law, and then it means that it also has to have the burdens. And the burdens are not just that you would be subject to any claim or to the claims that are related to the State, but to any kind of claim. So in somewhere where there is that kind of relationship that the corporation has in terms of incorporation or principal place of business, it's fair for the corporation, like a person where they're domiciled, to have to answer for any type of claim. But if we're talking about somewhere that you the corporation is just doing business where it's not considered at home, it's fair, the Court said, for the corporation in that circumstance to have to answer for claims that are related to the forum. But here we have these claims that are just no relationship to the forum at all. We don't have the plaintiffs from the forum. We don't have any injury in the forum. The defendants are not at home or incorporated in the forum. So we do think it makes sense for general jurisdiction, as the Court conceived of it in Goodyear and Daimler, to be this kind of safety valve going forward, and that where the bulk of the action would be is in the specific jurisdiction context, because after all, those are the places where things happened that are related to litigation. There's people there. There's evidence there. Those States have an interest in having those claims adjudicated, spending their time on litigation. If the Court has no further questions, we'd urge that the judgment of the Court below be reversed. Thank you. Thank you, counsel. Ms. Murray. Mr. Chief Justice, and may it please the Court, for more than a century, injured rail workers have been able to sue their negligent employers in a court of any State where the railroads are doing business. Congress gave workers this substantial right so that they, in Justice Jackson's words, would have the dice loaded in their favor. BNSF's view of Section 56 would turn this substantial right into an illusory one. If it was used in Section 56, the wording, civil action may be brought in, is found in some 200-odd venue statutes. So the way this statute is written, it sounds like a venue prescription, not a personal jurisdiction prescription. Well, certainly, Justice Ginsburg, we recognize that the language, you know, where suit may be brought, appears in other statutes and has been interpreted in that way. But I think this Court should look at Section 56 as a whole. We're not aware of another statute that, in a single paragraph, has the same language that FELA does, where it has a may — it talks about where suits may be brought. It then goes on to say that the jurisdiction of the State and Federal courts would be concurrent, and then has the very unusual — Ginsburg, it usually means that it's not — it's a Federal claim, but it can be adjudicated in State as well as Federal court. That's what concurrent jurisdiction means. Well, I — we think, Your Honor, in this context, it is ambiguous. Given — if you look at the statute as a package, where it has the may be brought language, the concurrent jurisdiction language, and then the very unusual provision that actually prohibits removal of these State — of these Federal causes of action into Federal court. And I would say, you know, to the extent that this Court is — is troubled by the — our reading of concurrent jurisdiction as perhaps an unusual one, I think it should be equally troubled by the — the illusory reading of Section 56 that BNSF would give it, because it — at the time that Congress amended FELA in 1910, it intended for workers not to have to go to the place of incorporation of the company or to leave far from their homes in order to bring suit, regardless of where they were injured. And the reality is, I — I think you can't think about this case, if you don't accept our reading of FELA, as being fair because workers could still get specific jurisdiction over the railroads in a place close to their home. That's simply not going to be the case for many of these workers. Roberts. Why is that? Well, I think Congress recognized in 1910 the railroad industry is unique. You have, in many cases, workers traveling five, six, seven hours, even to get to their starting work point, where they then travel farther away. So if you look, for example, at Mr. Nelson, he is a resident of the State of Montana. He was injured in the State of Washington. And under BNSF's view, he would either have to go to Washington, he'd have to go to Tarrant County, Texas, or he could go to Delaware. That's simply not the outcome that Congress ever would have predicted, given the language that it adopted in 1910 and what we know it was trying to do when it adopted that language. And why didn't it say the action could be brought at plaintiff's residence? Well, it considered that, Your Honor. And, in fact, it the reason that it didn't have plaintiff's residence language is because industry said we don't want to have to defend suit in the plaintiff's residence if we're not doing business there. So the doing business language, I think, was actually seen as being more fair to defendants than just a plaintiff's residence standard. And the other thing that I would point out on that issue is that in 1947, Congress again considered adopting a different standard for Section 56. It considered a plaintiff's residence standard, and it rejected it because it actually would have been used at that point to narrow the scope of places in which plaintiffs could have brought their suit. Congress was presented with evidence that plaintiffs were bringing suits similar to what our clients have done here, where the only connection between the suit and the State was the fact that the defendant was doing business there. Roberts. I haven't looked at a route map, but BNSF, I assume, is doing business in a lot of States, and this would allow plaintiffs, wherever they reside, wherever they are injured, to sue in any one of those States, right? That's correct, Your Honor. And we think that that is what Congress intended, and it's – Congress knew that that was, in fact, happening in 1947. Even though the injury occurred somewhere else. That's correct. And I think it is because of the unique nature of the railroad industry. You have workers – It's not the unique nature of particular forms? I mean, the discussion in the briefs is that there is a reason that someone, not a resident of Montana, injured in Washington, would want to sue in Montana. Is that something we ought to take into consideration? Well, I think you can take it into consideration, but I actually think it in many ways favors us. There are good reasons why someone would want to bring suit in Montana, even if they weren't injured there, even if they're not a resident. I mean, I think as BNSF concedes, there are a lot of these cases brought in Montana. And so – What's the good reason they would want to sue? Well, from a litigant's perspective, if you want predictability, you want to know that the court that you're going to knows the specialized area of law, like the back of their hand, that is Montana. These judges know FILA cases because they see a lot of them. So I think there is good reason for some to – That seems a little circular. Well, but it is the practical reality in terms of where people are bringing suits. I would say it's not the case that all of these cases are being brought in the State of Montana. I mean, I think BNSF and Insomniac certainly try to make that portrayal, but we don't have any hard data about that. And certainly in speaking with attorneys who represent FILA plaintiffs, they bring them lots of different locations, including, you know, other locations where people are not injured. And the fact of the matter is the railroad is just doing business there. The other thing I would say is that, you know, whether you're concerned about people bringing suit in the State of Montana, if you were to say that our clients could not bring suit here, it would also mean that those clients who want to bring suit in their home States, again, in many instances are not going to be able to do that. As to the specific jurisdiction question, I think, you know, we are in agreement that people could bring suit in the State where they were injured. But I actually think that the analysis of specific jurisdiction beyond that State gets quite complicated pretty quickly. You know, it would depend on, is this person, for example, primarily working in their home State? And the nature of this industry is many of these workers do not primarily work in their home States. They may rarely have ever worked there. So in under those circumstances, I think it is, you know, it's certainly not what Congress had in mind when it adopted the statute and said, you know, by adopting the statute, we are going to make sure that people can find the defendant at any point or place or State along the railroad's tracks, and there bring their actions. Well, they could be there. Alitono, I can understand why Congress, I could understand why they might have wanted to allow the injured worker to sue where the injury occurred or where the worker resides or where the company is headquartered, but why they would want to allow a suit in a State that satisfies none of those really is hard to understand. Well, Your Honor, I think it is actually easier to understand if you sort of set it in the context of what was going on at that time. The railroads, there were thousands of these injuries. And I think Congress recognized, you know, these are highly sophisticated interstate transportation companies. They can get to these places of litigation a lot more easily than injured workers who may have to travel three States over to get to the place where they are. Alitono, and that would just you could say that would justify saying provide a reason for saying you can sue where you live, you could limit it to those, to only those States where they are doing business. But why you would say you can sue anywhere has nothing to do with either the person who is injured or the company or where the injury occurs really is hard to understand going forward. Well, I do think it is the language that Congress chose. And I would say, too, with respect to the the ---- Ginsburg, you said different things in different cases, but I think Kepler, Kepler typed Section 56, the venue provision, didn't it? Certainly, this Court has referred to the provision as a venue provision. I don't think that's inconsistent with our position, because as we concede, we think the first sentence does, in fact, confer both venue and personal jurisdiction in Federal court. So it's not inconsistent. I would point, Your Honor, I think, you know, the perhaps the best cases in terms of support for our position are the Pope and the Boyd cases. So Pope, you had a situation very similar to this where someone brought suit in a State court that where the injury had not occurred, the only connection was the railroad was doing business there. And in that case, this Court said this. Section 56, quote, establishes Petitioner's right to sue in Alabama. It provides that the employee may bring his suit wherever the carrier, quote, shall be doing business, end quote. And admittedly, Respondent ---- Ginsburg, what year is that case? I'm sorry? What year is the Pope case? It was 1953. So it's post-international shoe. And this is a case we just we talked about it at page 29 of our response, where the Court has clearly staked out a position that the doing business language in the first sentence of section 56 applies to State courts. And I think the only way that you can make sense of that is to read section 56 in the way that we do that takes the personal jurisdiction conferred by sentence 1. Ginsburg. Do you have any example of any other statute that does what you claim this one does, that is, that determines State court jurisdiction, that has a provision, would you say this concurrent jurisdiction does, that alters the personal jurisdiction of a State court from what it would be without the Federal statute? So the ---- as I said, we don't have a statute that we think mirrors FILA. We do think it's an unusual statute that was called for by unusual circumstances. Probably the closest example is 15 U.S.C. 77b. It's part of the Securities Act. And that statute does actually have an express service of process provision with respect to Federal courts. It also has a concurrent jurisdiction language in it. And it has, in fact, in at least some lower courts, been interpreted where there's a disagreement among the lower courts as to whether that language actually provides or permits State courts to exercise personal jurisdiction to the same extent as Federal courts would as well. The Court in Pope didn't mention personal jurisdiction at all. That's right, Your Honor. We don't think we're not arguing ---- And that's your strongest authority? Well, I think it is one. I certainly think the Boyd case, again, another ---- this one is we talk about it, pages 31 to 32 of our brief. The Boyd case is another example where, again, we're not arguing it's a personal jurisdiction case, but it was a case in which this Court read Section 56, including sentence 2 of Section 56, to confer what it called a substantial right that under another provision of FELA which prohibits any contract, the intent of which is to exempt a carrier from liability. The right that ---- The right I think they're referring to is the right to proceed in State court,  That's correct, yes. That suit was filed in State court. I don't expect that to deal with the second sentence, because it talks about the concurrent jurisdiction. There's a difference between you can proceed in State court and the question whether it's personal jurisdiction in a particular State court. Well, I take your point, Your Honor, but I think we don't typically think of a provision that just says there's concurrent jurisdiction between State and Federal courts and is referring only to subject matter jurisdiction. Certainly in the circumstances like this where Congress, you know, thought that there was this jurisdiction before and it just wanted to be extra sure to confirm it, we don't think we don't typically think of concurrent State and Federal jurisdiction to refer to subject matter jurisdiction. No. What I was going to say is we don't typically think of provisions like that as conferring a substantial non-waivable right. And so I think the Boyd case, certainly in terms of looking at what is Section 56 doing, if all it is doing is saying that you can bring a cause of action in Federal court in certain venues and just reconfirming that State courts have subject matter jurisdiction, you wouldn't normally think of that. Or it seems difficult to work with. Ginsburg. Wasn't there a decision that suggested that State courts didn't have concurrent jurisdiction, and that's why Congress made the change? There was, Your Honor. And we don't take issue with the proposition from BNSF that that is one thing that was doing with the concurrent jurisdiction language. It was confirming that State and Federal courts both had subject matter jurisdiction. But we think given the precedent, given Boyd and Pope, you're not writing on a blank slate in terms of how you interpret Section 56. Well, Pope didn't mention personal jurisdiction. Did Boyd? No. These are not personal jurisdiction cases. But I do think the rationale that they used in interpreting Section 56, necessarily when you look at what Section 56 is doing, I think you do have to recognize it is doing something more than what BNSF says it is doing. And through Pope, that the language of doing business in Sentence 1 applies to Sentence 2 somehow, or applies to State courts somehow, and we think that Sentence 2 provides that necessary link. If I could talk briefly about our alternative argument. You know, if this Court were to read FILA not to permit State courts here to exercise personal jurisdiction, we do think that under this Court's determination in Daimler and the preceding precedent that there could be general jurisdiction here as well, given the nature of BNSF's contacts with the State of Montana. And I think one key in that analysis, or one way to frame that analysis, is to really look at railroads as being unique, that this is not, in the instance of BNSF in Montana, you have, again, a very sophisticated interstate commerce company that has, in fact, been in Montana through its predecessors, has been engaged there before Montana was even a State, and helped to populate the State by bringing in farmers and ranchers. There's some of the history of this in the maintenance of Waiameka's brief. Well, does your argument that railroad companies are so unique that they should be subject to general jurisdiction everywhere? I don't think that that would necessarily have to follow, but I think it is a key ingredient as to why BNSF is at home in the State of Montana. But I mean at home in the State of Montana and at home in every place else that it operates? Your Honor, I think it would depend on the other States in which it operates and its history in those States, the level of contacts. I mean, I think in addition to the history, if you look at present day, BNSF has a gigantic footprint in Montana. That's not true in all of the States in which it operates. It has over 2,100 miles, roughly 2,100 miles of track, 2,200 employees in the State, more than 40 facilities in the State, a permanent presence that crisscrosses the State and has for decades. And there is something – I understand the notion that railroads, for those reasons, they obviously have to have a lot of physical plant. They have to have a lot of workers. They, you know, traverse the State. I understand how that might look like there at home. But there are a lot of other industries that have a significant impact. I don't know, are there interstate banks or airlines? I suspect that there are agricultural companies that do a lot of business and cover a lot of land and territory. I mean, is your test just that it's a railroad, or how do you decide what other companies and industries are at home in Montana? Well, sir, we are not arguing for a standard that would sweep beyond railroads here. I think there could be aspects of other industries that would lend themselves to the same types of analysis. But I think the railroads actually are in a pretty unique segment of interest – industry in the sense of, unlike interstate or international banks, you know, on railroads to have a permanent physical presence in the State, because otherwise you cannot actually, you know, guarantee that you can carry goods from one point of the country to another. So trucking companies? Trucking companies, they carry a lot of goods, too. And they can go in many different routes, Your Honor. I think here, where you have the – Well, no. I mean, they're going to take, what is it, 95 across? Not 95. 90? I-80 across Montana. There you go. It's that geographical diversity. So I-80 across Montana, that's the route they're going to take. They're going to – just like the railroads are going to follow the railroad tracks, the truckers are going to follow I-80. Well, they're still not going to have that same sort of permanent physical presence in the State of laying down 2,100 miles of tracks. The other thing that I would point out with respect to BNSF's role in the State of Montana, I think to Justice Sotomayor's question about the registration, we do have an alternative argument with respect to consent. But we have all along also argued that the registration, the long time doing of business in Montana, should play a role and is distinct from some of the cases that this State has had before it in the past. And, you know, one other thing to know, which I think is, again, distinct from including Daimler, what we know here about BNSF is that it is so integrated into Montana's economic and political life, it's set up its own government relations shop in the State of Montana. It's got lobbyists there to advocate for its interests. Oh, I'm sure a lot of other companies have government relations offices in the State. Well, that may be true, Your Honor. And certainly, I think in this analysis, when you are looking at various factors that could lead you to conclude that BNSF is at home in the State of Montana, I think that is one factor that plays a role into it. You don't have to worry about, as you would in cases, for example, with, you know, foreign companies that are being dragged into court because their products happen to land in that state. Here you have a company that has a permanent physical president, and it's got If it doesn't like what is happening in the courts of Montana or the substantive law to which it is subjected in Montana. Sotomayor. You would still have a right to bring a Federal action in Montana, no? Under the Section 56, which permits an action to be brought in a district in which the defendant shall be doing business. No, Your Honor. If I understand your hypothetical, if we were to bring — if this Court decided that FELA did not address personal jurisdiction at all, what would happen if we tried to bring our suits in Montana Federal court, is that that Federal court would say, great, you have venue, but I look to Rule 4 for personal jurisdiction. That's assuming we reach that issue. Right. I suppose if this — We could just say it's a — we could just say it doesn't apply to State courts. It only applies to Federal courts. Whatever it does. You could, Your Honor. I think that that would be, you know, certainly preferable for us if there's still some availability of Federal court. One thing that I would note, however, is that would sort of create a topsy-turvy scheme. I think when Congress enacted FELA, it assumed that most of these suits would be brought in State court. But it would take care of the question of where a plaintiff lives. It would take care of the question of where a plaintiff lives. Counsel, I must apologize. It's 90 across Montana. 80 across Wyoming. I'm very sorry, Mr. Chief Justice. Can I say 90? Anyway, your problem, I guess, which you're trying to get around, is that Daimler had about 2.4 percent of its world sales in California, and was the largest seller of luxury goods in California, luxury cars. And I suspect when you sell luxury cars in California, it's really something. Well, they had a very big market, and the problem is how do you get around that? And I know you're trying, and it's making a valiant effort and so forth, but I don't really see the difference. Well, Your Honor, we hope it's more than a valiant effort in the sense that we do think that there are key distinctions, not just in the numbers here in terms of track and employees and business, but in terms of the nature of the industry. Their total operation is in Montana. We know that they get up to 10 percent of their revenue in the State of Montana, which, given that they operate in 28 States and a couple of Canadian provinces, it has to be the case that that is disproportionately large compared to the other States in which they operate. Good point. And if I could go back to your question, Justice Sotomayor, about if plaintiffs were able to bring these claims in federal court versus state. That would certainly be preferable than they couldn't bring it in any— That would depend on it being a personal jurisdiction provision, not just a venue provision. That's correct. If it's a venue provision, which the court said it was, then you satisfy the venue requirement, but not personal jurisdiction. That's right, Your Honor, and what would happen in that case is that Mr. Nelson, for example, living in North Dakota, would be headed to Washington, Texas or Delaware to bring his claim. That would be the reality, despite what Congress intended when it adopted or amended FELA in 1910. But it's— But what is his State of residence? He is a North Dakota resident and was injured, you know, in the State of Washington. Again, I think an example of how far these workers frequently travel in order to bring their — or frequently travel in the course of their work for BNSF, it in many ways is simply a coincidence, whether they're injured at home versus injured somewhere else. And of course, they would have no way of knowing that in advance. But I would say with respect to bringing suit in Federal court, I don't think it would completely solve the problem in this sense. You know, one, Congress thought these cases would be brought in State court. It didn't want them removed, or at least where plaintiffs chose to file them in State court, it did not want them to be removable. And I think part of that is because these are personal injury cases. Some of them are low-dollar claims. Congress wanted the plaintiffs to have their choice of forum, too, with respect to, you know, if you want to take this kind of claim to a State court judge for whom this is the bread and butter of their docket, you can do that. And I think if you were to limit these types of claims to Federal court in Montana, for example, or on the doing business rationale, one, plaintiffs would still be very limited in terms of where they could choose State courts, but it also wouldn't be as easily accessible to them. I mean, most of the time, Federal courts, you only have one or two in a State, and so it's not going to be as readily available of a forum for injured workers who, you know, certainly as compared to the railroad, they're going to be far more burdened by a rule like that. Mr. Murray, one of the rationales that Montana relied on was that Daimler applied only to foreign corporations, and I didn't see the briefs really grapple or attempt to defend that. Do you concede that that's erroneous? We don't — we think the way that the Montana court framed it, I think, is not a helpful one to think about it. What I would say is this. I don't think that you can simply say Daimler doesn't apply because it was a foreign corporation, but I do think Daimler, as earlier general jurisdiction cases had recognized, continued to recognize that the nature of contacts matter, and so certainly, I think, once you start moving up the corporate chain, once you start hopping into other continents and having to impute, to the extent that that is actually appropriate, having to impute contacts of a subsidiary, I think the nature of the contacts becomes so attenuated that at that point, that transnational element of Daimler actually does play a role. It's just not a dispositive one. Thank you. If the Court has no further questions. Thank you, counsel. Mr. Tullamello, nine minutes. Thank you, Mr. Chief Justice. Just a couple points. First, the Montana Supreme Court held that it did not need to apply this Court's decision in Daimler based on Daimler's transnational facts, and because BNSF is a domestic railroad, we think neither rationale is persuasive, and at least with respect to railroads being unique. We don't read this Court's due process cases as saying due process protection depends on the particular line of business that you're in. There are, as to movement and ownership of property, there are many industries, cable companies, agricultural businesses, and so forth, that have physical plants and that transport people across the country. And then with respect to FILA, we don't think it would be helpful or faithful to the text or legislative history to interpret section 56 in a way that grants personal jurisdiction when no other special venue statute or general venue statute has ever done so. So we respectfully ask that the Montana Supreme Court judgment be reversed. Thank you. Thank you, counsel. Thank you. The case is submitted.